Patterson *et al.*, *vs.* Cobb *et al.*—Opinion of Court.

---

ARCHIBALD PATTERSON AND REBECCA HIS WIFE, AND JAMES WACHOB, ADMINISTRATOR OF JOSEPH F. WACHOB, APPELLANTS, AND CHRISTOPHER C. COBB, ADMINISTRATOR DE BONIS NON OF JAMES W. EXUM, AND SUSAN A. MING, ADMINISTRATRIX OF FREDERICK L. MING, DECEASED, RESPONDENTS.

A party to the record is not a competent witness, even though before his examination he has surrendered and released all his right, title and interest, both at law and in equity, to the sums of money demanded or sued for.

An executor or administrator has no authority to bind the estate of his testator, or intestate by promise to pay a debt barred by the statute of limitations.

To take a case out of the statute of limitations, there must be an express promise, or such an acknowledgment as will legitimately raise an implication of a promise.

According to the general principles of the common law, an executor is guilty of a *devastavit* if he applies the assets in payment of a claim he is not bound to satisfy. A debt barred by lapse of time is as much within the reason of the rule as any other claim or demand which he would not be justified in paying.

The policy of the law of Florida with respect to demands barred by lapse of time, is indicated by the provision (Sec. 3 Thomp. Dig., 444,) which requires the Court before which a cause is tried against an executor or administrator, on an open account, to expunge therefrom every item which shall appear to have been due five years before the death of the testator or intestate.

This was an appeal from a decree of the Circuit Court of the County of Jackson, made at the May Term of said Court, 1850—Hon. Geo. S. Hawkins, Judge.

The nature and object of the bill filed by the appellants, complainants in the Court below, and the defence set up by the respondents, as well as the principles and points involved in the controversy, are succinctly stated in the opinion delivered by the Court, affirming the decree of the Court below.

*Woodward* and *Yonge* for Appellants.

*Bush* for Respondents.

THOMPSON, *Justice*, delivered the opinion of the Court.

On the hearing of this cause in the Court below, upon the bill, answer, exhibits and testimony, it was considered and ordered that the bill of the complainants, who are appellants here, should be dismissed, and the propriety of that judgment is the question before this Court.

It is alleged in the bill that in year 1832, James W. Exum became indebted to the complainants' intestate on several promissory notes and receipts—that in February,

1838, Exum died, leaving Frederick L. Ming his executor. In January, 1839, Joseph F. Wachob died, and in March, 1841, suit was instituted on these claims, by his personal representative, against Ming, as executor of Exum, and that in October, 1847, the suit was discontinued, at the request of Ming, and upon his promise and undertaking to pay the debt claimed therein—that Ming died in the Summer or Fall of the year 1843, leaving the debt unpaid, and administration *de bonis non* of the estate of Exum having been committed to the respondent, Cobb, a suit at law for the recovery of the debt was instituted against the latter, which was pending in November, 1848, when the Court House in Marianna was destroyed by fire, and the records and papers and files of the pending causes consumed therewith, and among them the files of the suit alluded to, together with the original evidence of the debt claimed.

The suit on the law side of the Circuit Court was not renewed, but the appellants sought their redress on the Equity side of the Court, founding their claim to this jurisdiction upon the fact of the destruction of the evidence of their claim, and an allegation that " a discovery as to " the condition of the estate of Exum, and the progress of " administration, is essential" to their case.

The answers of the defendants admit that the receipt, &c., set up by the complainants, did exist, but deny all knowledge that they were evidence of any debt by Exum to Wachob—that they knew nothing of any loaning of money by Wachob to Exum, but on the contrary believe that Exum was always largely in advance to Wachob, the latter being his deputy as marshal, and constantly in the receipt of sums of money due said Exum as costs. They deny all knowledge of the alleged promise by Ming to pay the sums claimed by the appellants—set up the defence of

26

the statute of limitations, and a claim to indemnity from the estate of Wachob to the estate of Exum, because of a recovery against the latter, by reason of a misfeasance or non feasance of Wachob, as the deputy of Exum in the performance of his duties in levying under exeeutions lodged in the marshal's office.

The defendants also insist, under the statute, that the complainants'. remedy, if any, is full, adequate and complete at law, and pray that they may have the same benefit of objection therefor as if they had demurred to the bill.

The first point assumed by the counsel for the complainants is, that it is competent for an executor or administrator to waive the statute of limitations by omitting to plead it, *a fortiori*, upon a sufficient consideration, and such a promise by the executor or administrator will bind the estate.

Before proceeding to consider this point, it may be well to remark, that the only testimony offered to prove a promise by Ming, is the deposition of Archibald Patterson, one of the parties on the record. It is alledged by the counsel for respondents, that his objections to the competency of said witness, noted at the time of the examination, was sustained by the Judge below, and one of the counsel for appellants has presented a brief upon the question of competency, but the other counsel deny here the propriety of the consideration of this question, inasmuch as it does not appear from the transcript of the record that the objection was made and decided in the Court below; neither does it appear but that the objection was waived at the hearing, and the deposition read. We do not deem it of sufficient importance to send down a *certiorari* to ascertain this fact, if it could be ascertained from the record below, or to institute an inquiry whether or not this point is open to the respondents in this Court, under our decision in the South-

ern Life Insurance & Trust Company vs. Cole.  If the objection was taken and decided in the Court below, it was correctly ruled both upon reason and authority ; and there was, therefore, no evidence of any promise by Executor. Patterson is a party to the record, and although before his examination he surrendered and released to the heirs and representatives of Wachob all his right, title and interest, both at law and in equity, to the sums of money demanded, if he had any, yet it did not remove the objection : he was still a party on the record, and was liable for.costs. 1 Greenlf. on Ev. 329, 330, 401, 402.  Scott vs. Lloyd, 12 Peters' R. 149.  Stein vs. Bowman, 13 Peters' R. 219. Bridges vs. Armour, 5 How. S. C. R. 95.

If the testimony of Patterson was read at the hearing, the question of the authority of an executor or administrator to bind the estate of his testator or intestate by promise to pay a debt barred by the statute of limitations, presents itself for consideration, and we are very clear that he has no such power.  It is true that Mr. Williams, in his Treatise on Executors, (p. 1110,) citing Norton vs. Frecker, 1 Atk. R. 526, says that an executor is not bound to plead the statute of limitations to an action commenced against him by a creditor of the testator, and there are other cases which hold that he may remove the bar directly by a new promise ; yet in a more recent case, cited by the same author, (Shewen vs. Vandenhorst, 1 Russ. & M. Rep. 349,) under a common decree in an administration suit, a creditor having applied to prove a debt barred by the statute, and the executor refusing to interfere, the residuary legatee was allowed to set it up.

The early English decisions, under the Stat. 21 Jac. I, c. 16, held that the statute affected the remedy only, leaving the debt still subsisting ; that it created simply a presumption of payment from the lapse of time, and that any ac-

knowledgment which repelled this presumption, was sufficient, although it was accompanied by a denial of liability; but in A'Court vs. Cross, (3 Bing. R. 329,) the Courts commenced to give a more reasonable construction to the statute, holding that if there be any thing said at the time of the acknowledgement to repel the inference of a promise, it will not be sufficient, and the defence, which before that time was looked upon with disfavor, was now regarded favorably. The Courts of the United States have gone further, and have given the defence a liberal application, considering the statute as it was intended by the Legislature, a statute of repose, to quiet old and stale claims set up after the circumstances attending the transaction had passed from the memory, or the witnesses had died. They have always held, that to take a case out of the statute, there must be an express promise or such an acknowledgment as will legitimately raise an implication of a promise. Reference has been made to the course of decisions in the English Courts, to show the leaning against this defence in the early cases, and therefore the little reliance to be placed on them as precedents.

According to the general principles of this common law, an executor is guilty of *devastavit* if he applies the assets in payment of a claim he is not bound to satisfy, as if he makes disbursements in the schooling, feeding or clothing of the children of the deceased, subsequently to his decease. So, if he pays a bond founded on an *usurious* contract, or a bond *ex turpi causa*, such payment will amount to a *devastavit*, as well against legatees as creditors; so, if the testator was bound in a *joint* obligation, and he dies before the co-obligor, the executor is not liable on the instrument at law, and therefore, if he pays the sum due upon it, he will be guilty of a *devastavit*. 2 Williams on Executors, 1109.

Upon what good reason the payment of a debt barred by the lapse of time before the death of the testator, should be excluded from the operation of this rule, we cannot discover. Clearly the right to recover against the executor does not exist, and therefore he is under no obligation to pay—the payment under such circumstances is a palpable misapplication of assets.

In the United States the decisions on the point have not been uniform, the earlier cases following the English precedents holding that an executor was not bound to set up the bar of the statute of limitations, where he had reason to believe that the debt was originally just, and had not been paid, and that his promise to pay would remove the bar, but it is believed from a careful review of the decisions that the weight of authority is the other way—that the executor has not power to bind the estate by an acknowledgment, or a new promise. See Fisher vs. Tucker, 1 M'Cord's Ch. R., 175. Peck vs. Potsford, 7 Conn. R., 180. Richmond, admr., Petitioner, 2 Pick. 560. Rogers vs. Rogers, 3 Wend. R., 517. Thompson vs. Peter 12 Wheat. R., 565. Certainly the decisions quoted seem to be based on grounds more consonant to reason and justice and the principles of law. It seems idle to assert as a principle of law that an executor cannot bind the estate by any contract, and yet permit him by a new promise to charge the estate with a debt extinct by operation of a statute.

In the case at bar, the right of action accrued in 1832, and the testator died in February, 1838; the bar therefore was complete at the time of the testator's death, and the debt must be presumed to have been paid, and was not a legal and just demand against his estate.

Our own statute, (act Nov. 10, 1828, Thomp. Dig. 444, § 3, art. 1,) indicates very strongly the policy of the law of Florida on this point. It requires the Court before which

a cause is tried against an executor on an open account against the deceased testator, to expunge from the account every item which shall appear to have been due five years before the death of the testator, and this, of course, without reference to the state of the pleadings.

It is also urged by appellants counsel that the statute of limitations does not run where there are mutual accounts and reciprocal demands. This is correct, but the case at bar is not such a case; the principle is founded on the exception in the Statute in favor of such accounts as concern the trade of merchandize between merchants, and has never been extended beyond the direct concerns of trade, in cases of accounts current between the parties, in which there are reciprocal charges and credits. Here there is no account current, but the claim of the appellants rests upon matters stated and settled by written memoranda and receipts.

We are well satisfied that at the time of the death of Exum, the debt claimed by the appellants was not a subsisting debt or demand against his estate, because of the bar of the statute; that the bar has not been removed by the alleged promise of the executor for want of power to bind the estate by such promise, and that this point of defence is fatal to this cause.

It is not deemed necessary to decide any of the other points raised by the pleadings, and discussed in the argument.

Let the decree of the Court below be affirmed, with costs.

# ERRATA.

Page 21, line 24, for Sever read Laver.

" 48, line 12, for Alderson read Adolphus.

" 60, line 39, after the word " call," supply the words "to account."

Page 81, line 6, for 3d Reports, read 3d Rawles Reports.

" 111, line 5, for " or," read " and."

" 126, line 21, for " last," read " first."

" 151, line 14, for " Atkinson," read " Atkyns."

" 197, line 14, for " Alderson," read " Adolphus."

" 283, line 16, for " former," read " latter."